UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL S. BEATY,<br><br>                Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,<br><br>                Defendant. | NO. C17-6056-RSM-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and remanded for an award of benefits.

## FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 54 year old man with an eighth grade education, consisting of special education classes. Administrative Record ("AR") at 86-87. He has not obtained a GED. AR at 87. Plaintiff previously received SSI benefits, beginning in 1989; however, benefits were terminated in 2013, when he was incarcerated. AR

REPORT AND RECOMMENDATION - 1

at 437. The ALJ found that Plaintiff has past work experience through a prison work release program as a temporary warehouse worker at a tree farm. AR at 42, 54. This work, for one month in 2014, was Plaintiff's last employment. AR at 224.

On October 3, 2014, Plaintiff filed a claim for SSI and DIB payments, alleging an onset date of March 1, 1989. AR at 2. Plaintiff asserts that he is disabled due to chronic back pain, learning disability, heart problems, asthma and arthritis. AR at 108.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR 137-144; 148-150. Plaintiff requested a hearing which took place on April 1, 2016. AR at 61. On May 18, 2016, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform past relevant work as a warehouse worker, as he had actually performed it. AR at 54-55. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on July 6, 2017, AR at 18-21, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). The Appeals Council rejected Plaintiff's proffered additional evidence of a new IQ score obtained after the ALJ's opinion, on the ground that it did not relate to the period at issue. AR at 19. After receiving an extension to do so, AR at 8, Plaintiff timely filed the present action challenging the Commissioner's decision on December 19, 2017. Dkt. 10.

## JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

REPORT AND RECOMMENDATION - 2

Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## EVALUATING DISABILITY

As the claimant, Plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

REPORT AND RECOMMENDATION - 3

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## DECISION BELOW

On May 18, 2016, the ALJ issued a decision finding the following:

1. The claimant has not engaged in substantial gainful activity since October 3, 2014, the application date.

2. The claimant has the following severe impairments: borderline intellectual functioning, degenerative disc disease, spondylosis, asthma, peripheral artery/vascular disease/lower extremity vascular abnormalities, cardiomyopathy, coronary artery disease status post stenting, hypertension, gastroesophageal reflux disorder (GERD), and hyperlipidemia.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), but limited to work that does not require standing or walking more than four hours total in a workday; that does not require stooping; that does not require more than occasional kneeling, crouching, crawling, or climbing of ramps or stairs; that does not require climbing of ladders, ropes, or scaffolds; that does not require exposure to extreme temperatures; that does not

REPORT AND RECOMMENDATION - 5

|     |     |                                                                                                                                                                                               |
| --- | --- | --------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     |     | require exposure to pulmonary irritants or hazards such as open machinery or unprotected heights; that consists of simple routine tasks; and that occurs where the general public is not typically present. |
|     | 5.  | The claimant is capable of performing past relevant work as a Warehouse Worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. |
|     | 6.  | The claimant has not been under a disability, as defined in the Social Security Act, since October 3, 2014, the date the application was filed. |

AR at 41-55.

## ISSUES ON APPEAL

The issue on appeal is:

    Did the ALJ err in finding that Plaintiff's impairments did not meet or equal Listing 12.05?

Dkt. 10 at 1, 3.

## DISCUSSION

A.    <u>The ALJ Erred in Finding that Plaintiff's Impairments Did not Meet Former Listing 12.05</u>

    1.    *Legal Standard*

Step three of the sequential evaluation process requires the ALJ to determine whether Plaintiff's impairments meet or equal any of the listed impairments set forth in Appendix 1 to 20 C.F.R. Part 404, Subpart P, App. 1. It is a claimant's burden to demonstrate that his impairments meet, or are equivalent to, a Listing. *See Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987). If a claimant's "impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id.* at 141; *see also Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "The listings define impairments that would prevent an adult, regardless of

REPORT AND RECOMMENDATION - 6

his [or her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Tackett,* 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphases in original).

    2.    *New Listing 12.05 Does Not Apply*

Plaintiff claims that his impairments meet or equal Listing 12.05, which addresses intellectual disability.[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05. Listing 12.05 was revised, effective January 17, 2017 (the "New Listing"): among other things, the New Listing[3] deletes sections C and D of the former Listing, and revises sections A and B. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2017). Before reaching the merits of Plaintiff's argument, the Court must determine whether New Listing 12.05 applies.

Plaintiff's application for benefits, the hearing before the ALJ, and the ALJ's opinion all pre-date the effective date of the New Listing; indeed, the ALJ analyzed Plaintiff's

---

[2] "Intellectual disability" was previously referred to as "mental retardation" in the regulations. The Court will use the current name in this Report and Recommendation; however, prior case law, which remains valid, may use the old term.

[3] For clarity, the Court refers to the revised Listing 12.05 as the "New Listing" and will refer to the former version as the "former Listing."

intellectual impairment under former Listing 12.05D. AR at 43-44. However, the Commissioner's brief in this matter cited the New Listing, with no comment or discussion regarding whether or why it applied. Dkt. 11 at 5. Plaintiff's briefing did not address the issue. Dkts. 10, 12. Accordingly, the Court requested supplemental briefing from the parties. Dkt 13. Both parties agree that the New Listing does not apply, and that this case should be decided under the former Listing. Dkt. 14 at 2-3; Dkt. 15 at 2. Accordingly, the Court will apply former Listing 12.05, which included sections C and D.

### 3. *The ALJ Erred in Failing to Analyze Former Listing 12.05C*

Former Listing 12.05 contains a preliminary descriptive paragraph which all claimants must meet:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05 (2011). Claimants must then establish the required level of severity through four alternative sets of criteria described in sections A through D. The ALJ evaluated the criteria in section D, but performed no analysis of the factors in section C. Those two provisions provide as follows:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

REPORT AND RECOMMENDATION - 8

*Id.*

The ALJ found that although Plaintiff had a qualifying IQ score, he did not meet the remaining section D criteria because he had only mild or moderate difficulties in each of the enumerated functional categories. AR at 43-44. But the ALJ never analyzed the factors in section C, which do not require those limitations. This was error. The error was not harmless, because, as discussed below, Plaintiff meets the 12.05C criteria, as well as the introductory paragraph requirements.

### 4. *Plaintiff's Impairments Meet Former Listing 12.5C*

To establish disability under former Listing 12.05C, a plaintiff must establish: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05 (2011); *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). The parties agree that the second and third criteria are met. Dkt. 14 at 6; Dkt. 15 at 3. The record in this case shows numerous IQ scores between 60 and 70, meeting the second requirement. AR at 308 (Full Scale IQ score of 68 in 1988); AR at 439 (Full Scale IQ score of 70 in 2014); AR at 2 (Full Scale IQ score of 63 in 2016). The third requirement is satisfied by the ALJ's finding at step two that Plaintiff suffers numerous severe impairments in addition to his intellectual impairment. AR at 41; *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1015 (D. Or. 2011).

Accordingly, the only issue is whether the record establishes the first element— subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22. The ALJ erred in finding that Plaintiff had not met this requirement.

First, the ALJ erroneously applied a contemporaneous testing requirement, finding that "the record includes no mental testing before this age [of 22]." AR at 44. The Ninth Circuit

has held that there is no such requirement: "evidence *from* the developmental period is not required to establish that the impairment began before the end of the developmental period[.]" *Hernandez v. Astrue,* 380 Fed. Appx. 699, 700 (9th Cir. 2010) (emphasis by the court). Instead, intellectual disability may be found "if the evidence suggests an early onset of low mental functioning, even if no one tested Plaintiff's intelligence until adulthood." *Id*. (noting that repetition of fourth grade, poor grades and failure to attend high school constitute such evidence).

Next, the ALJ found that subaverage intellectual functioning was not established because Plaintiff's diagnosis is "not intellectual disability . . . but the less restricted borderline intellectual functioning." AR at 44. This rationale is erroneous. Case law is clear that former Listing 12.05 does not require "a formal diagnosis of mental retardation [now known as intellectual disability]". *Pedro,* 849 F. Supp. 2d at 1010 (D. Or. 2011) (citing *inter alia Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)); *Gomez v. Astrue*, 695 F. Supp.2d 1049, 1057-58 (C.D. Cal. 2010) ("Section 12.05 does not require a diagnosis or finding of 'mental retardation,' but relies instead on valid IQs in conjunction with other evidence to establish 'subaverage general intellectual functioning.'") (citations omitted). The Seventh Circuit's decision in *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), cited by the Commissioner, is not to the contrary. There, the court merely noted that the lack of a diagnosis was among several factors supporting a finding that the claimant's IQ scores were not valid. 167 F.3d at 380. Here, the record before the ALJ contained 2 sets of IQ scores meeting the Listing requirements, and no party has questioned their validity.[4] The regulations impose no

---

[4] In addition, Plaintiff submitted to the Review Council a third evaluation conducted after the hearing, which reports a score of 63. AR 1-7. Furthermore, although it is not necessary to meet the requirements of former Listing 12.05, it is noteworthy that the new

specific diagnosis requirements, instead focusing upon measures like valid adult IQ scores and circumstantial evidence of subaverage functioning.   The ALJ erred in imposing a diagnosis requirement.

Finally, the ALJ erred in finding that Plaintiff had not shown deficits in adaptive functioning.  The ALJ relied upon statements that Plaintiff had a "'good' childhood," with "lots of friends," and that his current adaptive functioning is "limited but not to the point required to go beyond the level of borderline intellectual functioning." AR at 44.  These factors are not determinative of a lack of adaptive functioning deficits before age 22.  First, a happy childhood and the ability to make friends are not inconsistent with adaptive problems. *See e.g. Holt v. Berryhill* 274 F.Supp.3d 1187, 1198 (W.D. Wash. 2017) (rejecting argument that claimant's having lived with a woman as at age seventeen or eighteen, visiting friends frequently, and having a roommate who was a long-term friend supported a lack of adaptive deficits).  Furthermore, evidence of current adaptive functioning does not establish a lack of such deficits during the developmental period:  courts have recognized that "the plain language of Listing 12.05 'focuses on whether deficits in adaptive functioning existed during the developmental period, without reference to current functioning.'"  *Blacktongue v. Berryhill* 229 F.Supp.3d 1216, 1222 (W.D. Wash. 2017), quoting *Evans v. Colvin*, No. 3:13-cv-05436, ECF No. 27 at 11 (W.D. Wash. Jan. 30, 2014).  Thus, notwithstanding adequate current adaptive functioning, "a claimant may rely on circumstantial evidence such as 'attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history'" to establish adaptive deficits during

---

evaluation diagnoses "intellectual disability, mild," with an onset date of 1/1/1980 (when Plaintiff would have been 18 years old).  AR at 2, 7.

REPORT AND RECOMMENDATION - 11

the developmental period. *Id*, quoting *Campbell v. Astrue,* No. 09-cv-465, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011).

The ALJ acknowledged that Plaintiff's school history was exclusively in special education and that he dropped out in the eighth grade. AR at 44. However, the ALJ gave this undisputed evidence short shrift on the ground that Plaintiff told one of his psychological examiners that he left school "in part because he found it boring." AR at 44, citing AR at 308. The ALJ failed to state that the other reasons noted by the same examiner were Plaintiff's "difficult time with both reading and spelling," and that Plaintiff "was the frequent victim of assaults by other students." AR at 308. The record also contains undisputed evidence that Plaintiff has been unable to obtain a GED, and needed to have a friend fill out his work history and function reports for his disability application. AR 87, 258, 267. Although the ALJ disputed the extent of Plaintiff's illiteracy[5], he acknowledged Plaintiff had "some difficulties with reading and writing," and each of the examining psychologists noted such difficulties. AR at 43, 307, 308, 437. Plaintiff also has a minimal and sporadic employment history in unskilled jobs, with his highest earnings coming from his temporary work-release position in 2014. AR at 96, 224.

This evidence is more than sufficient to establish the first element of former Listing 12.05C. *Hernandez*, 380 Fed. Appx. at 701 (evidence that plaintiff repeated fourth grade,

---

[5] The ALJ relied heavily upon Plaintiff's statements to consulting examiner Lucretia Hyzy Krebs, Psy.D. in discounting Plaintiff's testimony about his illiteracy, but appears to have misapprehended their timing. AR at 43, 301-07. The report is dated 2004, but the ALJ misstated it as 2014, and treated the reported activities as current, instead of 10 years old. In particular, the ALJ found it significant that Plaintiff "is currently working on his GED" and "can read a lot of words now." AR at 43. But these statements were actually made in 2004, not in 2014. AR at 1, 7. The evidence is undisputed that Plaintiff did not receive his GED in the ensuing 10 years and, when he was imprisoned in 2013, he was placed in a class to learn to read at the first grade level. AR at 87.

REPORT AND RECOMMENDATION - 12

received poor grades and did not attend high school would be sufficient); *Potts v. Colvin*, 637 Fed. Appx. 475, 476 (9th Cir. 2016) (evidence of adult IQ of 53 and history of special education sufficient, even though plaintiff could read, play dominos and cards, and perform semi-skilled work). Other courts within the Ninth Circuit have likewise found the condition met for plaintiffs with special education backgrounds who have demonstrated abilities or accomplishments similar to, or even greater than, Plaintiff. *See Holt*, 274 F.Supp.3d at 1198-99 (plaintiff attended special education for three years and graduated high school with a B average); *Blacktongue*, 229 F.Supp.3d at 1223 (plaintiff attended special education, dropped out after the seventh grade, but had sustained low- and semi-skilled jobs over the years); *Pedro*, 849 F.Supp.2d at 1012 (plaintiff attended special education but managed to graduate from high school and could read newspaper), *Gomez*, 695 F.Supp.2d at 1060 (plaintiff dropped out of school in ninth grade because he "didn't really like" school and never obtained a GED); *Caffall v. Berryhill*, No. C17-5051-MAT, 2017 WL 5009692, at *3 (W.D. Wash. Nov. 2, 2017) (plaintiff attended special education but was able to graduate from high school and read recipes while he was employed in restaurants from age 17 to 34). In short, courts have overwhelmingly found a history like that of the Plaintiff sufficient to establish adaptive deficiencies during the developmental period. The ALJ erred in finding to the contrary.

Finally, the Commissioner argues that Plaintiff has failed to establish adaptive deficits because he has not proven the existence of certain factors applied by the American Association on Mental Retardation. Dkt. 14 at 8. There is no merit to this argument. First, it is a *post-hoc* rationalization not relied upon by the ALJ. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court reviews ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). More importantly, former Listing 12.05 does not

REPORT AND RECOMMENDATION - 13

contain the extra requirements the Commissioner attempts to impose.  In fact, during revisions made to the Listings in 2002, the SSA expressly rejected the incorporation of similar factors contained in a definition in the Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition into Listing 12.05.  *See* 67 Fed. Reg. 200018-01 at 20,022 (April 24, 2002).  *See also Maresh*, 438 F.3d at 899.

The ALJ erred in failing to find that Plaintiff met former Listing 12.05C.

B.  This Case Should Be Remanded for an Award of Benefits

As noted above, a remand for an award of benefits is appropriate when (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.  *See Massanari*, 298 F.3d at 1076-77.  Here, the ALJ erred by failing to find that Plaintiff meets former Listing 12.05C.  Additional proceedings are unnecessary to determine Plaintiff's entitlement to benefits.  As a result, there are no outstanding issues that must be resolved, and there is nothing to be gained by sending this matter back for another hearing.  Accordingly, this matter should be remanded with instructions to award benefits.

CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for an award of benefits.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 7, 2018**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be

REPORT AND RECOMMENDATION - 14

noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 9, 2018**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 24th day of October, 2018.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15